**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

ISIAH TRUJILLO,

    Petitioner,

v.                                                                         CV No. 19-584 KWR/CG

ATTORNEY GENERAL OF THE
STATE OF NEW MEXICO, et al.,

    Respondents.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** is before the Court on Petitioner Isiah Trujillo's *Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus By a Person in State Custody* (the "Petition"), (Doc. 1), filed June 24, 2019; his *Amended Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus By a Person in State Custody* (the "First Amended Petition"), (Doc. 4), filed September 3, 2019; his *Amended Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus By a Person in State Custody* (the "Second Amended Petition"), (Doc. 11), filed July 27, 2020; his *Response to Second Order to Show Cause*, (Doc. 22), filed January 27, 2021; Respondents' *Answer to Isiah Trujillo's* Pro Se *Petition for Writ of Habeas Corpus (28 U.S.C. § 2254) [Docs. 1, 4 and 11]* (the "Answer"), (Doc. 16), filed October 2, 2020; and Respondents' *Answer to Grounds One and Three (Partial) of Isiah Trujillo's Pro Se Petition for Writ of Habeas Corpus (28 U.S.C. § 2254) [Docs. 1, 4, and 11]* (the "Response"), (Doc. 26), filed March 2, 2021. This matter was assigned to Chief United States Magistrate Judge Carmen E. Garza on June 24, 2019. Thereafter, on January 28, 2021, United States District Judge Kea W. Riggs referred this case to the

undersigned to perform legal analysis and recommend an ultimate disposition. (Doc. 23).

After considering the parties' filings, the record, and the relevant law, the Court **RECOMMENDS** that the Petition, (Doc. 1), the First Amended Petition, (Doc. 4), and the Second Amended Petition, (Doc.11), be **DENIED**, that the *Response to the Second Order to Show Cause*, (Doc. 22), requesting an evidentiary hearing and the appointment of counsel be **DENIED**, and this case be **DISMISSED WITH PREJUDICE**.

### I.     Factual Background

This case stems from Mr. Trujillo's conviction for sexually abusing his minor stepdaughter. *See* (Doc. 26-1 at 1-4, 28-34). On May 22, 2015, after the sexual abuse had been reported, officers from the Carlsbad Police Department visited Mr. Trujillo's home to serve him with an order of protection. (Doc. 26 at 1); (Doc. 26-1 at 54). Mr. Trujillo invited the officers inside and agreed to speak with them. (Doc. 26 at 1); (Doc. 26-2 at 108). During their conversation, Mr. Trujillo admitted to Detective Allen Sanchez that he "had been touching [his stepdaughter]," attributing his actions to work-related stress. (Doc. 26-2 at 109). According to Detective Sanchez, Mr. Trujillo "began feeling uncomfortable," and "said he was starting to feel sick," but "did not look intoxicated or act[] as he was under the influence of anything." *Id.*; (Doc. 26-1 at 54).

On May 26, 2015, Detective Sanchez interviewed Mr. Trujillo a second time, this time at the police station. (Doc. 26-2 at 110). In his report, Detective Sanchez stated that although the interview was non-custodial, and he indicated as much to Mr. Trujillo, he nevertheless advised Mr. Trujillo of his *Miranda* rights. *Id.* at 110-11. Detective Sanchez stated that Mr. Trujillo indicated he understood his rights, his "eyes were not

2

bloodshot," "he did not smell of any alcoholic beverage," "his speech was articulate," and he had "just returned from work . . . where he operated his motor vehicle in an obvious safe manner." *Id.* at 111. Then, according to Detective Sanchez, Mr. Trujillo proceeded to recount the sexual abuse in great detail. *Id.* at 111-13.

On July 13, 2015, Mr. Trujillo was charged with fifteen counts in total of second-degree criminal sexual penetration, second-degree criminal sexual contact of a minor, and fourth-degree criminal sexual contact of a minor. (Doc. 26-1 at 1-4). Prior to trial, Mr. Trujillo's attorney disclosed his witness list, which included Mr. Trujillo's former primary care provider, Jackie Lardie, FNP-BC. (Doc. 26 at 3). Mr. Trujillo's attorney further disclosed a letter from Nurse Lardie, dated August 29, 2016, in which she describes Mr. Trujillo's medical history, and opines that Mr. Trujillo "was mentally and emotionally impaired when questioned by police." (Doc. 26-1 at 10). The Fifth Judicial District Court, Eddie County (the "state trial court") granted the prosecution's motion to exclude Nurse Lardie's testimony regarding the effects of alcohol consumption on a diabetic, but permitted her to testify about Mr. Trujillo's medications and her discussions with him about his alcohol consumption. (Doc. 26 at 3-4).

## II.     Procedural Background

Two years later, on January 18, 2017, a jury found Mr. Trujillo guilty on all fifteen counts charged: three counts of criminal sexual penetration in the second degree, NMSA 1978 § 30-9-11(E)(1); eight counts of criminal sexual contact of a minor in the second degree, NMSA 1978 § 30-9-13(B)(1); and four counts of criminal sexual contact of a minor in the fourth degree, NMSA 1978 § 30-9-13(D)(1). (Doc. 26-1 at 28-34). The

3

state trial court sentenced Mr. Trujillo to sixty years of imprisonment followed by five to twenty years of probation. *Id.* at 33.

Mr. Trujillo appealed his conviction, and the New Mexico Court of Appeals (the "state court of appeals") affirmed. (Doc. 26-1 at 35, 71-76, 100-07). Mr. Trujillo petitioned the New Mexico Supreme Court (the "state supreme court") for a writ of certiorari, which the state supreme court denied. *Id.* at 116-29, 130-31. Mr. Trujillo did not pursue state collateral review; rather, he sought mandamus relief and filed various other *pro se* motions separate from his direct appeal, which the state courts denied. *See* (Doc. 26 at 4).

Mr. Trujillo then filed this 28 U.S.C. § 2254 petition (the "Petition" or the "§ 2254 petition"). (Doc. 1); (Doc. 4); (Doc. 11). Mr. Trujillo now appears before this Court *pro se*. (Doc. 1); (Doc. 4); (Doc. 11).

### III.  Mr. Trujillo's Section 2254 Claims

In his § 2254 petition, Mr. Trujillo raises two grounds for relief:[1] (1) ineffective assistance of trial counsel; and (2) error by the state trial court judge for excluding Nurse Lardie's expert testimony regarding the effects of alcohol consumption on a diabetic. (Doc. 1); (Doc. 4); (Doc. 11); (Doc. 24). Further, Mr. Trujillo requests an evidentiary hearing on these claims and the appointment of counsel. (Doc. 22 at 2).

Respondents maintain, first, that counsel's representation of Mr. Trujillo was constitutionally adequate, but even if it were not, Mr. Trujillo was not prejudiced by any purported failure by trial counsel to investigate the *Miranda* issue. (Doc. 26 at 10-13).

---

[1] Mr. Trujillo initially raised four grounds for relief. *See* (Doc. 1); (Doc. 4); (Doc. 11).Thereafter, however, he moved to dismiss two of those grounds and part of one of the remaining grounds as unexhausted, which the Court granted. *See* (Doc. 17); (Doc. 22); (Doc. 24).

4

Respondents do not address Mr. Trujillo's other ineffective-assistance-of-counsel claims, contending those claims are insufficiently "specific or concrete to merit relief." *Id.* at 11. Respondents argue, second, that the state trial court judge properly applied state rules of evidence in excluding part of Nurse Lardie's testimony, and the state court of appeals' dismissal of this claim on the merits requires this Court to defer to the state court of appeals' determination. *Id.* at 13-14.

As a *pro se* litigant, Mr. Trujillo's pleadings are to be "liberally construed." *Sines v. Wilner*, 609 F.3d 1070, 1074 (10th Cir. 2010) (citation omitted). Liberal construction requires courts to make some allowance for a *pro se* litigant's "failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Garrett v. Selby, Connor, Maddux, & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (citation omitted). Indeed, *pro se* litigants are held to "less stringent standards" than those expected of lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, a *pro se* litigant's pleadings are to be judged by the same legal standards that apply to all litigants, and he must still abide by the applicable rules of court. *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994). In addition, a court cannot "assume the role of advocate" for the litigant, nor is it required to fashion his arguments for him. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citations omitted); *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (citations omitted).

### IV.   Exhaustion of State Court Remedies

Before discussing the merits of Mr. Trujillo's claims, the Court must address the threshold issue of exhaustion. *See Rose v. Lundy*, 455 U.S. 509, 518 (1982) (requiring

a prisoner to present his claims to the state courts before presenting them to the federal courts for collateral review). As discussed in the Court's prior *Order to Show Cause*, Mr. Trujillo has satisfied the exhaustion requirement for his remaining two grounds. (Doc. 17 at 3-4, 5-6). Respondents do not dispute exhaustion of the remaining two grounds, and concede that the claims may be evaluated on their merits. (Doc. 26 at 5).

## V.    Analysis

Mr. Trujillo filed his § 2254 petition after April 24, 1996, and thus the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs the Court's review of his Petition. *See* (Doc. 1); (Doc. 26 at 5, n.2). Under 28 U.S.C. § 2254(a), a person in state custody may petition a federal court for relief on the ground that he is in custody in violation of the United States Constitution or laws. A petition under § 2254 may not be granted unless the state court judgment: (1) resulted in a decision contrary to or involving an unreasonable application of clearly established federal law, as determined by the United States Supreme Court; or (2) resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented. *Id.* §§ 2254(d)(1)-(2). Factual findings are presumed correct and the petitioner has the burden of rebutting that presumption by clear and convincing evidence. *Id.* § 2254(e)(1).

A state court decision is "contrary to" clearly established law if it: (1) "applies a rule that contradicts the governing law set forth" in Supreme Court cases, or; (2) "confronts a set of facts that are materially indistinguishable" from a Supreme Court decision and "nevertheless arrives at a result different from" the Supreme Court decision. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Similarly, a state court decision constitutes an "unreasonable application" of federal law when a state

6

"unreasonably applies" Supreme Court precedent "to the facts of a prisoner's case." *Id*. at 409. The state court decision must be more than incorrect or erroneous. *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citation and quotation omitted). Rather, the application "must be 'objectively unreasonable.'" *Id*. (quoting *Williams*, 529 U.S. at 409). This imposes a highly deferential standard of review, and state court decisions must be given the benefit of the doubt. *Id*.

### A. Claim One: Ineffective Assistance of Counsel

Mr. Trujillo first argues his trial counsel provided ineffective assistance for the following reasons:

(1) failing to "follow [P]etitioner's strategy";
(2) failing to "obtain[] any discovery";
(3) failing to "disclos[e] any discovery to [P]etitioner";
(4) failing to "conduct[] any of [P]etitioner's claims";
(5) failing to "interview[] any of [P]etitioner's witnesses or at least not having transcripts to prove that he did";
(6) failing to "properly impeach[] the state's witnesses";
(7) failing to "prepar[e] properly what questions to ask during the Petitioner's testimony";
(8) "[f]alsifying the docketing statement for [P]etitioner's appeal";
(9) failing to "properly qualify[] [P]etitioner's expert witness but rather qualifying her as a fact witness";
(10)  failing to "provid[e] an expert witness";
(11)  "violating [P]etitioner's right to a speedy and fair trial;"
(12)  failing to "fil[e] the proper pre-trial motions such as a motion to suppress.

(Doc. 4 at 1-5).

Respondents contend only the *Miranda* claim is sufficiently specific or concrete to merit relief. (Doc. 26 at 11). With regard to the *Miranda* claim, Respondents contend Mr. Trujillo was not prejudiced by any purported failure by his trial counsel to research the *Miranda* issue, because the record shows Mr. Trujillo "knowing[ly], voluntar[ily], and

7

intelligently waived his Miranda rights while speaking with Detective Sanchez on May 26, 2015." *Id.* at 13.

A prisoner is entitled to federal habeas relief on an ineffective-assistance-of-counsel claim only if he shows "(1) 'counsel's performance was deficient' and (2) 'the deficient performance prejudiced the defense.'" *Crawley v. Dinwiddle*, 584 F.3d 916, 922 (10th Ci. 2009) (quoting *Strickland v. Washington*, 466 U.S. 668, 684 (1984)). As to the first prong, *Strickland* demands the petitioner establish that his counsel's "representation fell below an objective standard of reasonableness" such that "counsel's errors were so serious as to deprive the [petitioner] of a fair [criminal] trial." *Williams v. Taylor*, 529 U.S. 362, 390 (2000) (quoting *Strickland*, 466 U.S. at 687)). The Court must give "considerable deference to an attorney's strategic decisions" and "recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690.

As to the second prong, the court need not address whether counsel's performance was deficient if the petitioner fails to prove actual prejudice. *See Neill v. Gibson*, 278 F.3d 1044, 1055 (10th Cir. 2001) (citing *Smith v. Robbins*, 528 U.S. 259, n.14 (2000) for the proposition that the "court may consider *Strickland*'s prejudice component without first addressing adequacy of counsel's performance"). To establish prejudice, the petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the [trial] would have been different." *Strickland*, 466 U.S. at 690. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. "Moreover, when evaluating an ineffective

8

assistance of counsel claim under § 2254(d)(1), [a federal court's] review is 'doubly deferential.'" *Crawley*, 584 F.3d at 922 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). Finally, the Court's review of Mr. Trujillo's ineffective-assistance-of-counsel claim is *de novo*, because the state court of appeals addressed this claim procedurally rather than on the merits. *See* (Doc. 26 at 11); *see also Neill v. Gibson*, 278 F.3d 1044, 1055 (10th Cir. 2001).

### 1. *Trial Counsel's Conduct Regarding the Miranda Issue*

First, the Court will address Mr. Trujillo's claim that trial counsel rendered ineffective assistance by failing to move to suppress his confession. (Doc. 4 at 584). In particular, Mr. Trujillo contends his confession to Detective Sanchez was not made voluntarily, knowingly, and intelligently and thus violated *Miranda*. *See id.* at 14. He claims trial counsel's failure to move to suppress the confession rendered counsel's assistance ineffective. *Id.* Respondents contend Mr. Trujillo was not sufficiently prejudiced by counsel's decision to not seek suppression, because even if counsel had done so, the confession would not have been suppressed. (Doc. 26 at 12-13).

The Fifth Amendment to the United States Constitution provides protection against self-incrimination. U.S. CONST. AMEND. V. An individual may waive this privilege only "voluntarily, knowingly, and intelligently." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). For the waiver to be made knowingly and intelligently, the individual must have made it "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Colorado v. Spring*, 479 U.S. 412, 421 (1986). Further, "[a] statement is involuntary in violation of due process if a defendant's will was overborne by the circumstances surrounding his confession." *U.S. v. Lamy*, 521

9

F.3d 1257, 1261 (10th Cir. 2008) (internal quotations omitted). Coercive police activity is a "necessary predicate" to finding a *Miranda* waiver involuntary. *Colorado v. Connelly*, 479 U.S. 157, 167, 170 (1986).

In the lead up to his criminal trial, Mr. Trujillo wrote several letters to trial counsel. *See generally* (Doc. 4 at 52-86). In them, he describes his mental state before and during his May 26, 2015 interview with Detective Sanchez at the Carlsbad Police Department, and he urges counsel to move to suppress the statements he made during the interview. *Id.* Mr. Trujillo explains in the letters that two days prior to the interview, when Detective Sanchez visited him at his home, he had ingested six beers on his way home from work, and then another "6 to 8 beers" before Detective Sanchez arrived at his home. *Id.* at 59. On the day of the interview, he had "many large beers" at Chili's, drank "more beer" at "the look out," and then "took 60 mg Adderall." *Id.* at 60-61. The letters claim that during that two-day period, Mr. Trujillo "didn't bring much of any meds for [his] Type II [diabetes] . . . only . . . Adderall [and] Dualaxitine, which [he] was taking with alcohol." *Id.* at 60.

Despite these claims, however, nothing in the record shows Mr. Trujillo's *Miranda* waiver was not knowing and intelligent. Mr. Trujillo drove his vehicle to the police station for the interview without incident, and Detective Sanchez observed that his "speech was articulate," his "eyes were not bloodshot," and "he did not smell of any alcoholic beverage." (Doc. 26-2 at 111). Detective Sanchez read Mr. Trujillo his *Miranda* rights and reminded him several times that he was "not in custody." (Doc. 20 at 18); (Doc. 26-2 at 111). Detective Sanchez further explained, "[I]f you start talking to me and stuff and then you decide you wanna stop, you could stop at any time." (Doc. 20 at 18). He then

10

asked Mr. Trujillo, "Do you understand your rights?" *Id.* Mr. Trujillo answered, "I do. Yes." *Id.* Even then, Detective Sanchez asked again, "[H]aving those rights in mind, do you still wanna talk to me a little bit?" *Id.* Mr. Trujillo answered, "I agree." *Id.*

Then, Mr. Trujillo described in specific detail the sexual abuse concerning his stepdaughter. *See* (Doc. 26-2 at 108-114); *see also* (Doc. 20 at 16-18). For instance, he recalled "the first time he had ever touched [his stepdaughter] inappropriately[,]" which he remembered "occur[ing] in May of 2014." (Doc. 26-2 at 111). He recalled engaging in this particular type of touching "from May 2014 through October 2014[,]" and then further recalled engaging in a different type of touching from "mid-January 2015 through April 2015." *Id.* at 112. He was able to describe to Detective Sanchez the two occasions in which he had digitally penetrated his stepdaughter. *Id.*

Even if Mr. Trujillo were intoxicated, as he argues, he would have needed to be not merely intoxicated but "impaired to a substantial degree [by drugs or alcohol] to overcome his ability to knowingly and intelligently waive his privilege against self-incrimination." *See U.S. v. Burson*, 531 F.3d 1254, 1256-57 (10th Cir. 2008). The totality of circumstances in the record show that Mr. Trujillo was alert and responsive. *See id.* (considering a totality of the circumstances in determining whether a person knowingly and intelligently waived his *Miranda* rights).

In addition, nothing in the record shows Mr. Trujillo's *Miranda* waiver was involuntary. Despite Mr. Trujillo's argument otherwise, Detective Sanchez did not coerce Mr. Trujillo's waiver and subsequent confession. *See* (Doc. 4 at 19); *see also Connelly*, 479 U.S. at 167, 170. Detective Sanchez read Mr. Trujillo his *Miranda* rights. *See* (Doc. 20 at 18); (Doc. 26-2 at 111). He advised Mr. Trujillo several times that he was free to

11

leave the interview. *Id.* After reading Mr. Trujillo his rights, satisfied that Mr. Trujillo had understood them, Detective Sanchez then confirmed Mr. Trujillo was willing to speak with him. *Id.*

The state court of appeals appropriately found "the record . . . insufficient to establish that trial counsel's allegedly unreasonable conduct prejudiced the defense in the sense required." (Doc. 26-1 at 106-07). Without considering whether trial counsel's failure to move to suppress Mr. Trujillo's statements to Detective Sanchez rendered counsel's performance deficient, Mr. Trujillo has failed to show a reasonable probability that the outcome of his trial would have changed had counsel filed a motion to suppress. *See Neill*, 278 F.3d at 1055.

### 2. *Trial Counsel's Conduct Regarding Nurse Lardie*

Next, the Court will consider Mr. Trujillo's claims that trial counsel rendered ineffective assistance by failing to properly designate Nurse Lardie as an expert "rather than qualifying her as a fact witness." (Doc. 4 at 16); *see also supra*, at 7 n.9. Mr. Trujillo argues, specifically, that trial counsel "didn't try to fight to make [Nurse Lardie] an expert witness," and that counsel provided "no rational reason [for] not providing an expert witness to prove that Petitioner was illegally interrogated." (Doc. 4 at 17, 18). Respondents do not address this argument, instead contending it is not "sufficiently specific or concrete to merit relief." (Doc. 26 at 11).

On September 29, 2016, Mr. Trujillo's trial counsel disclosed a supplemental witness list, which included Nurse Lardie. (Doc. 4 at 141). Three months later, on December 19, 2016, trial counsel disclosed a letter written by Nurse Lardie, in which, in relevant part, she stated the following:

12

> [A]lcohol affects the brain as a depressant and at high blood alcohol levels interferes with judgment, reasoning, coordination and behavior. High blood sugar levels do the same. The level of consciousness is decreased making rational speech and thought difficult and the person struggles to stay focused and perform simple tasks. Mr Trujillo had both of these factors at play while deprived of his medications and it is my professional opinion that he was mentally and emotionally impaired when questioned by police.

(Doc. 26-1 at 10). Then, the prosecution moved to preclude Nurse Lardie from testifying as an expert witness given the late disclosure by Mr. Trujillo's trial counsel. (Doc. 4 at 141-43).

At the motion hearing, trial counsel initially stated he intended to call Nurse Lardie as only a fact witness, but upon further questioning, the state trial judge clarified that trial counsel intended to call Nurse Lardie as both a fact and expert witness. *Id.* at 16-17. As a result of the late disclosure, the state trial judge permitted Nurse Lardie to testify only as a fact witness. *See* (Doc. 26-1 at 93, 125). Thus, Nurse Lardie's inability to testify as an expert witness was not the result of trial counsel's failure to qualify her as an expert, but rather his failure to timely disclose her as a witness. Accordingly, the issue here is whether timely disclosure of Nurse Lardie as an expert witness would have altered the outcome of Mr. Trujillo's trial.

As Mr. Trujillo argues in the Petition, Nurse Lardie's expert testimony would have been aimed at showing Mr. Trujillo did not knowingly and intelligently waive his *Miranda* rights. *See* (Doc. 4 at 18). However, as explained above, the totality of the circumstances of Mr. Trujillo's May 26, 2015 interview, including his lucidity, alertness, and detailed responsiveness, showed that his *Miranda* waiver was knowing and intelligent. *See supra*, at 10-11.

13

Further, Nurse Lardie's proposed expert testimony is belied by Mr. Trujillo's own actions and demeanor during the interview. For instance, Nurse Lardie states in her letter that Mr. Trujillo's use of alcohol and Adderall while not taking medication for his diabetes would have "ma[de] rational speech and thought difficult," and he would have "struggle[d] to stay focused and perform simple tasks." (Doc. 26-1 at 10). As explained above, Mr. Trujillo appeared to understand his *Miranda* rights, did not appear to be intoxicated, and gave specific details of the sexual abuse. *See supra*, at 10-11. Nurse Lardie's proposed expert testimony likely would not have shown Mr. Trujillo to have been "impaired to a substantial degree [by drugs or alcohol] to overcome his ability to knowingly and intelligently waive his privilege against self-incrimination." *Burson*, 531 at 1256-57. Therefore, Mr. Trujillo has failed to show a reasonable probability that the outcome of his trial would have changed had trial counsel properly disclosed Nurse Lardie as an expert witness. *See Neill*, 278 F.3d at 1055.

### 3. *Trial Counsel's Other Conduct*

Finally, the Court will not consider the following remaining arguments Mr. Trujillo proffers to support his ineffective-assistance-of-counsel claims: failure to "obtain[] any discovery"; "disclos[e] any discovery to [P]etitioner"; "conduct[] any of [P]etitioner's claims"; "interview[] any of [P]etitioner's witnesses or at least not having transcripts to prove that he did"; "properly impeach[] the state's witnesses"; "prepar[e] properly what questions to ask during the Petitioner's testimony"; "violating [P]etitioner's right to a speedy and fair trial;" and "[f]alsifying the docketing statement for [P]etitioner's appeal." (Doc. 4 at 1-5).

As Respondents contend, these allegations are insufficiently specific or concrete to merit review or relief. *See Quintana v. Mulheron*, 788 F. App'x 604, 609 (10th Cir. 2019) ("We have repeatedly held that conclusory allegations are insufficient to warrant habeas relief for ineffective assistance of counsel."); *see* (Doc. 26 at 11). Moreover, most of these allegations fall squarely within the ambit of decisions related to trial tactics, for which trial counsel enjoys a presumption of sound trial strategy.[2] *See Harrington v. Richter*, 562 U.S. 86, 107 (2011) ("[C]ounsel [are] entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies."); *see also Strickland*, 466 U.S. at 689 ("Even the best criminal defense attorneys would not defend a particular client the same way.").

Therefore, Mr. Trujillo has failed to show that he was prejudiced by any of the conduct discussed above that would render trial counsel's assistance ineffective. *Strickland*, 466 U.S. at 684.

### B. Claim Two: Abuse of Discretion

Mr. Trujillo next argues the state trial court judge erred in precluding Nurse Lardie from testifying as an expert, and permitting her to testify only as a fact witness. (Doc. 1); (Doc. 4); (Doc. 11); (Doc. 24). Respondents argue the state trial court judge properly applied state rules of evidence in excluding part of Nurse Lardie's testimony, and the state court of appeals' dismissal of this claim on the merits requires this Court to defer to the state court of appeals' determination. *Id.* at 13-14.

---

[2] Mr. Trujillo's speedy-trial argument is unavailing for two additional reasons. First, assigned counsel is the agent of the defendant and not a state actor capable of violating the defendant's right to a speedy trial. *Vermont v. Brillon*, 556 U.S. 81, 85 (2009). "Delays sought by counsel are ordinarily attributable to the defendants they represent." *Id.* Second, nothing in the record establishes an eighteen-month delay was unreasonable given the complexity of Mr. Trujillo's case, or that the delay sufficiently prejudiced Mr. Trujillo. *See Strickland*, 466 U.S. at 690.

15

The United States Supreme Court has held "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A habeas petitioner may obtain relief for an improper state court determination of state law only if the alleged error was "so grossly prejudicial [that it] fatally infected the trial and denied the fundamental fairness that is the essence of due process." *Bullock v. Carver*, 297 F.3d 1036, 1055 (10th Cir. 2002) (bracket in original).

Here, Mr. Trujillo's claim concerns a state law determination. Trial counsel disclosed Nurse Lardie's letter late, in violation of Rule 5-502(A)(3) NMRA, and, as a sanction, the state trial court judge precluded Nurse Lardie from offering expert testifying. (Doc. 26 at 13). As Respondents argue, this decision rested in the sound discretion of the state trial court judge, and implicated a state procedural rule. *See State v. McKinney*, No. 28,466, 2009 WL 6763616, at *2 (N.M. Ct. App., Feb. 9, 2009) (unreported). As such, Mr. Trujillo cannot establish that the state trial court judge committed error.

In any event, Mr. Trujillo cannot show he suffered the requisite prejudice. As explained above, the totality of the circumstances of his interview showed that his *Miranda* waiver was knowing and intelligent. *See supra*, at 10-11. In addition, Mr. Trujillo's conduct and demeanor during the interview largely contradicted Nurse Lardie's proposed testimony. *See supra*, at 13.

Further, the state court of appeals rejected this claim on the merits, "conclud[ing] that the limitations imposed upon the witness' testimony constituted an appropriate corrective measure." (Doc. 26-1 at 102). Mr. Trujillo has failed to present clear and

16

convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *see also Wood v. Allen*, 558 U.S. 290, 293 (2010) ("[A] determination of a factual issue made by a State court [is] presumed to be correct and the petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.") (internal quotations omitted).

Accordingly, Mr. Trujillo has failed to present clear and convincing evidence to undermine the state court of appeals' finding that the state trial court judge erred in precluding Nurse Lardie from testifying as an expert. See. *Wood,* 558 U.S. at 293.

## VI.   Conclusion

For the foregoing reasons, the Court finds that Mr. Trujillo has not established that the state courts' decisions in this case were contrary to or unreasonable applications of clearly established federal law, or that they were based on unreasonable determinations of fact in light of the evidence presented.

The Court further finds that neither an evidentiary hearing nor the appointment of counsel is warranted in this matter, because Mr. Trujillo has not made a showing that his claims rely on "a new rule of constitutional law, made retroactive . . . by the Supreme Court[,]" "a factual predicate that could not have been previously discovered through the exercise of due diligence[,]" or that "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty." 28 U.S.C. § 2254(e)(2); Rules Governing § 2254 Cases, Rule 8(c), 28 U.S.C.A. foll. § 2254.

The Court therefore **RECOMMENDS** Mr. Trujillo's *Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus By a Person in State Custody*, (Doc. 1), *Amended*

*Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus By a Person in State Custody*, (Doc. 4), and *Amended Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus By a Person in State Custody*, (Doc. 11), be **DENIED**; that his *Response to Second Order to Show Cause*, (Doc. 22), requesting an evidentiary hearing and the appointment of counsel be **DENIED**; and that this case be **DISMISSED WITH PREJUDICE**.

The Court further finds that Mr. Trujillo has failed to make a substantial showing of the denial of a constitutional right, pursuant to 28 U.S.C. § 2253(c), and therefore **RECOMMENDS** that the Court **DECLINE** to issue a certificate of appealability.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
THE HONORABLE CARMEN E. GARZA
CHIEF UNITED STATES MAGISTRATE JUDGE